Filed 2/2/16  In re A.B. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

In re A.B., a Person Coming Under the
Juvenile Court Law.

|  |  |
|---|---|
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E064375 |
| Plaintiff and Respondent, | (Super.Ct.No. J249851) |
| v. | OPINION |
| C.H. at al., |  |
| Defendants and Appellants. |  |

APPEAL from the Superior Court of San Bernardino County.  Cheryl C. Kersey,

Judge.  Affirmed.

Grace Clark, under appointment by the Court of Appeal, for Defendant and

Appellant L.B.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and

Appellant C.H.

Jean-Rene Basle, County Counsel, and Danielle E. Wuchenich, Deputy County Counsel, for Plaintiff and Respondent.

L.B. (father) and C.H. (mother) appeal from an order terminating parental rights to their daughter, A.B. (sometimes child). Their sole appellate contention is that the trial court erred by denying the father's "changed circumstances" petition under Welfare and Institutions Code section 388 (section 388). We find no error. Hence, we will affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

The father and the mother are married and have one child together, A.B. A.B. was four when the dependency was filed and is now seven. The mother also has an older son, T.H., from a previous relationship.

In June 2013, according to T.H., the father hit the mother because she would not give him money for "more" alcohol. To protect the mother, T.H. hit the father in the face. (The father claimed that he grabbed the mother by the shoulders but did not hit her. Initially, the mother claimed not to remember whether he hit her or not. Later, she claimed that he shoved her but did not hit her.)

That same day, the father hit T.H. in the head with a glass ashtray. A.B. was present and was yelling for them to stop fighting.

The father admitted using marijuana and abusing alcohol. When drug-tested about 10 days later, he was positive for opiates.

The father agreed to a safety plan that called for him to live apart from the rest of the family. Accordingly, San Bernardino County Children and Family Services (the Department) did not detain A.B., but it did file a dependency petition regarding her.[1]

In August 2013, the juvenile court sustained the petition as to A.B. based on failure to protect. (Welf. & Inst. Code, § 300, subd. (b).) It formally removed her from the father's custody but left her in the mother's custody.

In January 2014, the social worker discovered that the father was living with the mother and A.B.; the paternal grandparents were also living in the home. The paternal grandparents reported that the parents "consistently leave the children unattended for extended periods of time . . . ." A.B. was "filthy" and unkempt. The father admitted that he was using methamphetamine and marijuana.

Accordingly, in January 2014, the Department detained A.B. and filed a supplemental petition as to her. She was placed in a foster home. In March 2014, the juvenile court sustained the allegations of the supplemental petition.

The parents failed to comply with their reunification services plans, including, but not limited to, the substance abuse-related requirements. Meanwhile, the foster mother expressed an interest in adopting A.B. Thus, in March 2015, at a 12-month review

---

[1] The dependency petition was also as to T.H. Because this appeal relates solely to A.B., the record with regard to T.H. is fragmentary. We therefore do not discuss him further.

hearing, the juvenile court terminated reunification services and set a Welfare and Institutions Code section 366.26 (section 366.26) hearing.

In July 2015, the father filed a section 388 petition. The juvenile court set a non-evidentiary hearing on the section 388 petition for the same date and time as the section 366.26 hearing.

In August 2015, after hearing argument, the juvenile court denied the section 388 petition without an evidentiary hearing. It found that there was no change of circumstances. It also found that granting the petition would not be in the best interest of the child.

It then proceeded to hold a section 366.26 hearing. After hearing further argument, it found that A.B. was adoptable and that there was no applicable exception to termination. It therefore terminated parental rights.

## II

## THE DENIAL OF THE SECTION 388 PETITION

A. *Additional Factual Background.*

When A.B. was first placed with the prospective adoptive mother, she "ha[d] a tendency to be aggressive and extremely defiant . . . ." She would hit and kick the foster mother and other children. She had tantrums. She would sneak away. She would also stick small toys and other objects in her vagina.

She was diagnosed with attention deficit hyperactivity disorder, oppositional defiant disorder and disinhibited social engagement disorder. With the juvenile court's

approval, she began taking psychotropic medication. She seemed to respond well to the medication and also to counseling.

According to the report for the section 366.26 hearing, she had improved "significantly." She was "much more stable in her current placement." She was "much more cooperative and willing to listen." The prospective adoptive mother reported that "there were no behavioral inciden[t]s in the past year."

In the opinion of the adoption social worker, A.B. and the prospective adoptive mother were attached to each other. A.B. said that she wanted to live with the prospective adoptive mother "forever."

The father's reunification services plan had included substance abuse services (including both outpatient services and aftercare, such as 12-step program meetings), parenting classes, domestic violence classes, and individual counseling.

In May 2015, the father had completed an outpatient substance abuse program. While he was in the program, all of his drug tests were negative. However, he had not drug-tested since completing the program. He assured the social worker and the court that he was not using drugs.

The father was currently attending parenting and domestic violence classes. He told the social worker that he was going to finish the parenting class before the hearing and he would bring his certificate of completion to the hearing. However, he did not appear at the hearing.

The father had a job that paid eight dollars an hour for about 30 hours a week. He had obtained suitable housing. He stated that "[t]he mother . . . will not be allowed to reside in the home until she completes her drug treatment program." However, the social worker discovered that the mother was currently living there with him.

The father had supervised visitation for an hour a week. The visits were "positive" and both he and A.B. enjoyed them.

B.      *The Juvenile Court Did Not Abuse Its Discretion*.

"A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child. [Citation.] The parent bears the burden to show both a legitimate change of circumstances and that undoing the prior order would be in the best interest of the child. [Citation.] Generally, the petitioner must show by a preponderance of the evidence that the child's welfare requires the modification sought. [Citation.]" (*In re A.A.* (2012) 203 Cal.App.4th 597, 611-612 [Fourth Dist., Div. Two].)

"Under section 388, a party 'need only make a prima facie showing to trigger the right to proceed by way of a full hearing.' [Citation.] The prima facie showing is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition. [Citation.] In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. [Citation.]" (*In re J.P.* (2014) 229 Cal.App.4th 108, 127.)

"'The petition is addressed to the sound discretion of the juvenile court, and its decision will not be overturned on appeal in the absence of a clear abuse of discretion.' [Citation.]" (*In re J.T.* (2014) 228 Cal.App.4th 953, 965.) ". . . 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' [Citation.]" (*In re Stephanie M*. (1994) 7 Cal.4th 295, 318-319, original quotation marks corrected.) "'The denial of a section 388 motion rarely merits reversal as an abuse of discretion.' [Citation.]" (*In re Daniel C*. (2006) 141 Cal.App.4th 1438, 1445.)

Here, the juvenile court reasonably concluded that there were no relevant changed circumstances. The father still had not complied fully with his reunification services plan. He had not engaged in individual counseling, as required. He had not finished a parenting class; he promised to bring a certificate of completion to the hearing but failed to appear. Likewise, it did not appear that he had finished a domestic violence class. He claimed that he would not allow the mother in the home until she completed drug treatment, yet she was already living there.

Most significantly, the father still had not completed the drug treatment element of his reunification services plan. He had completed an outpatient treatment program, but he had not engaged in any of the required after-care services. He had not drug-tested for three months, between May 2015, when he completed the outpatient program, and August 2015, when his section 388 petition was heard. "It is the nature of addiction that one

must be 'clean' for a much longer period . . . to show real reform." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9 [120 days].)

Separately and alternatively, the juvenile court reasonably concluded that granting the petition would not be in the best interest of the child. When A.B. was first detained, she was a very troubled child, but she had improved "significantly" while in the care of the prospective adoptive mother. She and the foster mother had a "mutual attachment." Although her visits with the father were "positive," it was reported that, when visits ended and she had to separate from him, "she does not show any emotion whatsoever." There was no reason to think that she would be any better off with the father than with the prospective adoptive mother.

We therefore conclude that the juvenile court did not err by summarily denying the father's section 388 petition.

### III

### DISPOSITION

The order appealed from is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ          
P. J.

We concur:

McKINSTER     
J.

MILLER        
J.